# Exhibit A

## Statement of Facts

1. Plaintiff was hired to manage trade show and marketing operations and was praised for her performance. She was asked to take on Cision, a communications/media monitoring platform, reflecting growing trust and responsibility shortly before she was fired.

2. Plaintiff is a lesbian and was open about her same-sex relationship. After bringing her Black partner to company events, Plaintiff was retaliated against: she was removed from the ModCorr account, excluded from meetings, and later disciplined, while employees who brought opposite-sex partners were not treated this way.

3. At a company lunch in May 2024, Plaintiff's supervisor initiated a discussion about her brother and sister-in-law having an "OnlyFans" account involving MMF and FFM content. The supervisor described this as "weird and gross." This sexually explicit and judgmental commentary in a professional setting was inappropriate, unwelcome, and contributed to a hostile work environment.

4. As a lesbian, Plaintiff reasonably understood these statements as expressing animus toward LGBTQ and non-heteronormative relationships, reinforcing the bias and hostility she was already experiencing.

5. At the ACA Conference in Maryland in January 2024, during a company dinner, the same supervisor made a sexualized joke about "swallowing oysters" and laughed with another coworker. When Plaintiff said she did not understand, the supervisor responded, "well, that makes sense," prompting Plaintiff to reply, "because I am lesbian?"

6. This exchange not only involved an inappropriate sexual joke in a work setting but also tied Plaintiff's sexual orientation into the ridicule.

7. Later at the ACA hotel cocktail hour, Plaintiff sat with ModCorr part-owner Joe Burch and his wife, who remarked that "gay people could sometimes be good people, like lawyers or doctors," but added that they were only acceptable "so long as they weren't too flamboyant."

8. These comments implied that LGBTQ identity was abnormal, akin to a defect, and that acceptance was conditional and rare. As an openly lesbian employee, Plaintiff was demeaned by these statements, which reinforced hostility toward LGBTQ employees.

Exhibit A- Attached to Complaint filed by Plaintiff Makayla Moss

9. In the same conversation, Stan Ledbetter recounted that a sheriff in South Texas told him that if "illegals" came onto property, they could be shot and no one would notice. Others at the table chuckled or treated the comment as acceptable.

10. Plaintiff, who has Hispanic relatives, was deeply disturbed by the comment and the lack of response.

11. The supervisor also told Plaintiff to forward her "all important work in case [Plaintiff] were hit by a train," implying Plaintiff was replaceable and reflecting disdain toward her contributions.

12. Plaintiff reported directly to the Head of Marketing, who supported her by giving her autonomy and a dedicated trade show room.

13. The supervisor resented this and imposed conflicting restrictions, requiring Plaintiff to abandon her office, work from a cubicle, and "check in" first — requirements not imposed on others.

14. Plaintiff was forced to work in unsafe warehouse conditions that aggravated her asthma. She had to change clothes during the workday because of the heat. Other employees were not subjected to these conditions.

15. When Plaintiff was finally assigned an office and set it up herself, she was terminated shortly thereafter and never allowed to use it.

16. Defendant provided disparate accommodations: coworkers were excused for minor reasons (such as rain), but Plaintiff's medically excused absences for asthma were held against her.

17. After Hurricane Beryl, Plaintiff requested accommodations, but the supervisor's response was harsher compared to coworkers with less damage, who were excused.

18. Plaintiff was removed from all ModCorr meetings and communications after bringing her partner. When mistakes later occurred, Defendant unfairly used her lack of knowledge against her in a disciplinary write-up, despite her prior inquiries as to why she was excluded.

19. The disciplinary write-up Plaintiff eventually received was fabricated and pretextual. Plaintiff had never been disciplined or warned before and was blindsided.

20. None of the issues listed had ever been discussed with her, and she had only recently been praised by ownership and leadership for her work.

Exhibit A- Attached to Complaint filed by Plaintiff Makayla Moss

21. Company ownership praised Plaintiff multiple times — including at the very event she was later disciplined for.

22. At that event, Plaintiff had stepped in last-minute after the original host failed to attend, rushing from the TDEM trade show in Fort Worth while gathering signage and materials from FedEx.

23. The owners' praise directly contradicts the alleged performance concerns cited in her write-up.

24. Defendant denied Plaintiff resources routinely provided to others, such as a company card and per diem for travel.

25. Plaintiff was forced to pay for hotels, gas, travel fees, and even check-in charges out of pocket, with reimbursements delayed or denied.

26. On one occasion, Plaintiff's personal car was used to transport alcohol for a company event after a trade show, damaging her leather interior. She was never compensated.

27. Plaintiff evacuated to Lake Charles during Beryl. When ordered to return, she told management she would sleep in her car if necessary.

28. After multiple failed attempts to find a hotel with power, she paid out of pocket for an Airbnb.

29. She was never reimbursed, though coworkers with company credit cards expensed even bar charges.

30. Plaintiff believes Defendant's true intent was to call her back under strain simply to fire her.

31. In addition, Plaintiff was asked by her supervisor to "just make up a number" for women-owned/minority-owned business participation in a government proposal.

32. This instruction to falsify compliance data shows the company's willingness to cut corners and disregard truth in dealings with government agencies.

33. The same culture of dishonesty and retaliation carried over into how Plaintiff was treated, punished, and ultimately terminated.

34. Defendant fabricated disciplinary paperwork using a generic template, not tied to any handbook or HR process.

Exhibit A- Attached to Complaint filed by Plaintiff Makayla Moss

35. Plaintiff was not permitted to complete the employee statement section during the write-up meeting.

36. After her write-up, she submitted her rebuttal to the HR representative through Teams messages.

37. Plaintiff was never provided with an employee handbook, HR policy manual, or any training on how to report sexual harassment or discrimination.

38. Plaintiff also never received any sexual harassment prevention training. This failure left her and others without guidance on how to report harassment or handle inappropriate conduct.

39. As a result, when Plaintiff experienced discrimination and harassment, she was forced to raise concerns informally through emails and Teams messages rather than through an established reporting system.

40. On or about July 11, 2024, Plaintiff emailed her department head reporting her belief that she was being discriminated against on the basis of sexual orientation.

41. Within minutes of sending that email, the supervisor called Plaintiff into her office and terminated her, smiling and laughing during the termination.

42. After her firing, Plaintiff called the HR representative, who first claimed the termination was for insubordination, then changed it to performance, but could not provide a single example of either.

43. These inconsistent explanations demonstrate pretext.

44. After termination, Defendant retaliated by submitting false statements to the Texas Workforce Commission (TWC) — including claims that Plaintiff was evicted, did not live in her home, and had power after Beryl.

45. All were untrue. Plaintiff has court records and documentation disproving them.

46. When Plaintiff personally spoke with TWC, staff recognized the inconsistencies, saw through Defendant's misrepresentations, and granted unemployment benefits.

47. After her termination, Defendant went out of its way to dig into Plaintiff's personal life in search of justification. This is the only way they could have known about Plaintiff's prior eviction case, which had already been dismissed.

48. Despite knowing or easily being able to confirm that dismissal, Defendant submitted the eviction to TWC as if it were true. This demonstrates that Defendant was actively looking

Exhibit A- Attached to Complaint filed by Plaintiff Makayla Moss

     for reasons to damage Plaintiff's credibility and livelihood, further evidencing retaliation and malice.

49. The supervisor also falsely told Plaintiff that "most everyone is back at the office" after Beryl, even though many employees living off-island had not returned due to vacations or personal reasons.

50. Plaintiff was unfairly singled out.