EEOC No. 460-2024-08716 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 460-2024-08716 |
| Texas Workforce Commission Civil Rights Division | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Ms. Makayla M. Moss

Phone No.: (682) 247-1452

Year of Birth: 1998

Mailing Address: 6203 Lakeridge Rd.

ARLINGTON, TX 76016

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: SLSCO LTD

No. Employees, Members: 101 - 200 Employees

Phone No.:

Mailing Address: 6702 BROADWAY STREET

GALVESTON, TX 77554, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

### DISCRIMINATION BASED ON:

Disability, Retaliation, Sex

### DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/04/2024

Latest: 07/11/2024

### THE PARTICULARS ARE:

I was employed as a Marketing Coordinator. During my employment I was treated differently due to my sex (sexual orientation) and disability. I complained and experienced retaliatory action. On July 11, 2024, I was terminated.

I was hired on December 18, 2023, as a Marketing Coordinator, under the supervision of Chelsea Ando. During my employment, I was treated less favorably than my peers because of my sex (sexual orientation), my disability, and in retaliation for opposing discriminatory practices. I was frequently praised for my performance and asked to take on responsibilities beyond my original role. These included identifying and distributing proposal opportunities to the team, editing and designing proposal documents, and inserting placeholder diversity metrics on submissions. For example, I was once instructed to add a made-up number to a proposal response regarding woman-owned and minority-owned business participation. I was not provided real data to verify, but still asked to complete it. This reflects both the level of responsibility I was given and the inconsistency in how I was later labeled as underperforming. Despite these contributions, the treatment I experienced changed after I brought my same-sex, Black partner to a company trade show. I was removed from the ModCorr account and excluded from related meetings without explanation. Later, when I brought my partner to an SLS trade show, I was written up shortly afterward. This shows a clear pattern of targeting and retaliation after both events. Early in my employment, Ms. Ando and others made inappropriate remarks about LGBTQ+ individuals. At a company lunch, she spoke about OnlyFans content involving LGBTQ+

EEOC No. 460-2024-08716 | FEPA No.

couples and described it as weird and gross. These remarks were sexually explicit, offensive, and contributed to a hostile work environment. I was denied training and not provided with a proper workspace. I worked in a hot warehouse and was later moved into an office with visible mold. I was blamed for the state of the warehouse even though I occupied only a small corner of the space. I have photo evidence showing my area was clean and orderly, and I sent a mass Teams message asking everyone to clean up after themselves. I was also not the only person handling trade show boxes and materials, yet I was the one held responsible. I was also blamed for damage to items shipped to a trade show. Because I had been removed from meetings and kept out of the loop, I wasn't aware a new stand was included. I had carefully wrapped everything I handled with bubble wrap. It was unfair to hold me accountable for something I wasn't informed about. After Hurricane Beryl, my home was flooded and left without power. I have asthma and requested to work remotely, but my request was denied. Other employees with less severe circumstances were allowed to work from home. I paid over $1,000 out of pocket for an Airbnb near the office and told Chelsea I would sleep in my car if I couldn't find a place. I was never reimbursed. Other employees, particularly those in sales, were issued corporate credit cards and reimbursed for their travel and lodging expenses. Shortly after being assigned new responsibilities, I was written up for fabricated and exaggerated issues. The disciplinary form was pulled from the internet and filled out using ChatGPT, which was common practice by my supervisor. I was not allowed to submit an employee statement, even though the form included space for one. This occurred shortly after I was told I was doing a great job and asked to manage additional tasks. After receiving the write-up, I filed a complaint with HR (Joanna) through Microsoft Teams because there was no formal process or handbook. On the morning of my termination, I sent an email to my supervisor Kayla Orton stating that I believed I was being treated unfairly due to my sexual orientation. Minutes later, I was called into a meeting and fired. Joanna initially said it was due to insubordination and performance but could not provide a clear explanation and ultimately said I would have to ask Chelsea. This conversation is recorded. After I was fired, the company submitted false information to the Texas Workforce Commission, stating that I had power during the hurricane and had been evicted. I was not evicted I withheld rent after weeks without air conditioning and went to court to get the property manager's attention. I paid in full and the eviction was dismissed. I have video and photo proof showing flood damage and loss of electricity. These false claims were not only retaliatory but felt harassing and invasive. It raised serious concerns for me about how far they were willing to go to discredit me and whether other former employees were subjected to this kind of personal digging. Despite their claims, the Texas Workforce Commission ruled in my favor and awarded unemployment benefits. The caseworker confirmed I had been praised for my performance, which directly contradicts the reasons the company gave for firing me.

I believe I was discriminated against based on my sex (female and sexual orientation), my disability, and in retaliation for raising concerns and submitting internal complaints. I was also subjected to discriminatory treatment because of my association with my same-sex partner, who is Black, after bringing her to company events. These actions are in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

EEOC No. 460-2024-08716 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Ms. Makayla M. Moss
05/17/2025
Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____
Printed Name _____

**CP ENCLOSURE WITH EEOC FORM 5 (06/24)**

**PRIVACY ACT STATEMENT**

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).
2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.
3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.
4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.
5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.